IN THE CIVIL DISTRICT COURT

FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DEUTSCHE BANK NATIONAL TRUST COMPANY,   Case No. 2014-12347

AS TRUSTEE FOR LONG BEACH MORTGAGE LOAN

TRUST 2005-WL1

       Plaintiff,

v.

JESSIE LEE

       Defendant,

_____/

## OBJECTION TO INTERVENTION AND MOTION TO RECONSIDER, CHALLENGE TO THE COURT'S JURISDICTION, INJUNCTION, CANCEL VOID JUDGMENT AND PROPERTY SALE, QUIET TITLE AND SANCTIONS

COMES NOW, in propria persona, JESSIE LEE, Defendant with this OBJECTION TO INTERVENTION AND MOTION TO RECONSIDER, CHALLENGE TO THE COURT'S JURISDICTION, INJUNCTION, CANCEL VOID JUDGMENT AND PROPERTY SALE, QUIET TITLE AND SANCTIONS and states the following:

1. The Defendant Objects to the intervention into this case of Attorney Mark C. Landry, for him and his client's sake. Due to the liability it will bring upon them.

2. Attorney Mark C. Landry and his client, are trying to make unlawful claims on the Defendant's property, by way of an unlawful Sheriff's Sale and a void Judgment.

3. By now, Attorney Mark C. Landry should be fully aware of the crimes, that were committed in this fraudclosure case. He should withdraw from the case and seek a full refund for his client, in order to indemnify both personally from liability and to avoid a piercing of his law firm's corporate veil.

Exhibit E

4. Attorney Mark C. Landry moves from a false premise, when it comes to the Defendant's alleged Promissory Note. Attorney Mark C. Landry believes that as long as the Promissory Note is endorsed in blank, its ownership and right to enforce is legal, regardless of whether it was signed by MOTHER GOOSE or endorsed by PETER PAN. As long as it is endorsed in Blank, it is legal and transferable as bearer paper.

5. Attorney Mark C. Landry is sadly mistaken. A counterfeit Promissory Note with a forged signature on it, endorsed in blank, is not a legal document. It is not transferable and extends no bearer paper powers to enforce. It is actually a crime. Attorney Mark C. Landry's perception and such lunacy of thought is non compos mentis. For that reason, the Defendant requests all his statements be stricken from the court record.

6. Because of her convalesce in a nursing home, this Defendant will not comment much on Judge Clare Jupiter, other than to say, her denial of the Defendant's injunction was in error. The Defendant requests that this court reconsider his request for an injunction again, at this time.

## PROOF OF FRAUD UPON THE COURT BY USE OF A COUNTERFEIT PROMISSORY NOTE:

7. It is the Plaintiff that shoulders the burden of proof, of his court submitted case and jurisdiction, not the Defendant. The Defendant does not have to prove anything, because he is not making the allegations or bringing the claim.

**Loos v American Energy Savers, Inc., 168 Ill.App.3d 558, 522 N.E.2d 841(1988)** *"Where jurisdiction is contested, the burden of establishing it rests upon the plaintiff."*

*"A court has no jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question the first instance."* **Rescue Army v. Municipal Court of Los Angeles,** *171 P2d 8: 331 US 549, 91 K, ed, 1666m 67 S, Ct, 1409*

8. It is the Plaintiff that must submit FACTS and legal EVIDENCE into the court, to obtain a lawful or legal Judgment against the Defendant and prevail in his suit.

9. Attorney Barry Grodsky, presented No FACTS, No Affidavits, No Witnesses. Instead presented ALLEGATIONS and unlawful EVIDENCE to the court and obtained a Judgment,

Sheriff sale and an issuance of title from the court, to the winning bidder of that sale. Most of these actions were improper, illegal and unlawful.

10. It is without a doubt, no less than a huge embarrassment, to the entire legal system.

*"An attorney for the plaintiff cannot admit evidence into the court. He is either an attorney or a witness"*. **(Trinsey v. Pagliaro** D.C.Pa. 1964, 229 F. Supp. 647)

*"Statements of counsel in brief or in argument are not sufficient for motion to dismiss or for summary judgment,"* **Trinsey v. Pagliaro**, D. C. Pa. 1964, 229 F. Supp. 647.

*"Where there are no depositions, admissions, or affidavits the court has no facts to rely on for a summary determination."* **Trinsey v. Pagliaro**, D.C. Pa. 1964, 229 F. Supp. 647.

11. Being that Attorney Barry Grodsky appears to be unwilling to have his client appear in court and present TRUTHFUL FACTS and lawful or legal EVIDENCE to this court, the Defendant will now do it for them.

12. The Judge, sitting in as referee, can only consider the FACTS, lawful and legal EVIDENCE before the court and rule only thereupon, to issue orders and Judgments.

13. The Defendant JESSIE LEE, points this judge's attention to three huge pieces of evidence and fact, currently before the court.

14. The first piece of Evidence is the Promissory Note. Submitted into the court as exhibit A evidence, from the Plaintiff himself and used by Attorney Barry Grodsky, to obtain a Judgment and to conduct a Sheriff sale of the Defendant JESSIE LEE'S property.

15. That Promissory Note, which is a Monetary Instrument, and currently unlawfully being held as evidence in the courts vault, by the current Clerk of Court, is a COUNTERFEIT Promissory Note with a FORGED SIGNATURE on it and blank endorsement.

In the State of Louisiana: **Monetary Instrument Abuse** - RS: 14:72.2 A
<u>Whoever possesses a counterfeit or forged monetary instrument shall be fined not more than one million dollars and imprisoned for not more than ten years. Monetary instrument" means: A note or a security</u>.

16. It is very easy to spot the forged signature on the Promissory Note, because it is signed by JESS ALMANZA as Vice President for Long Beach Mortgage Company.

17. JESS ALMANZA has never served as a Vice President for Long Beach Mortgage Company. As a matter of FACT, JESS ALMANZA has never even worked for Long Beach Mortgage Company period.

18. JESS ALMANZA worked for **Washington Mutual** as Vice President - Capital Markets/National Post Closing Operations. Between **Aug 1995 – Jul 2006.** Then he worked for **Bank of America** as Director, Secondary Marketing Operations From **Sep 2006 until Present.** See attach Linkedin Resume as Exhibit C.

19. You cannot sign a document, claiming the position and authority of a Vice President, for a company you never worked for. That is called fraud and that's a crime, A Federal offence in the United States,

20. Obviously, that Promissory Note, is not a legal or lawful Monetary Instrument. The counterfeit document can never be authenticated, which is mandatory in the State of Louisiana, to be used in a foreclosure. Louisiana Code of Civil Procedure article 2636 3(a) and (e) and Revised Statute 10:3–308(a)

21. The counterfeit Monetary Instrument / Promissory Note, cannot be used in a Executory or Ordinary Process to foreclose or conduct a lawful Sheriff sale on a property. The Promissory Note in itself, is evidence of many CRIMES.

22. There are also court depositions taken, showing that electronic copies of signatures and endorsements, like JESS ALMANZA, were used by banks, law firms and attorneys, to falsify Promissory Notes and Mortgages, in order to fraudulently foreclose and unlawfully steal property from the American people. See attached example as Exhibit D.

23. The second piece of Evidence, is submitted to the court from the defendant, by way of an Affidavit, from an expert witness with many years of BAR experience. Stating facts of fraud, pertaining to the Promissory Note and Mortgage. It clearly speaks for itself before this court. See exhibit B.

24. The third fact before this court, is an affidavit and Sworn Testimony given by Ronaldo Reyes, Vice President of DEUTSCHE BANK as Trustee, in a Superior Court in New Jersey, that DEUTSCHE BANK as Trustee, could not hire a law firm to represent them in a

foreclosure. In the Sworn Affidavit, it states that it is not their job to do so and it is prohibited by the Pooling and Servicing Agreement, in which DEUTCHE BANK as Trustee is bound by.

25. It is the Defendants opinion and belief, that it is the Law Firms and Attorneys themselves, bring forth these fraudulent documents and foreclosures and stealing homes from the American People. Only sometimes working with Banks in champerty.

26. With these Facts and Evidence before this court, it is obvious that the Plaintiff is without standing to bring suit, which means that this court has no subject matter Jurisdiction, The court cannot lawfully or legally render anything, much less issue a judgment.

27. The Plaintiff's Sheriff sale and court issued judgment is void ab initio. The court acted ultra vires and the court record must be corrected.

"*The law requires proof of jurisdiction to appear on the record of the administrative agency and all administrative proceedings.*" **Hagans v Lavine 415 U. S. 533.**

"*jurisdiction is fundamental and a judgment rendered by a court that does not have jurisdiction to hear is void ab initio.*" In re Application of Wyatt, 300 P. 132;p Re Cavitt, 118 P2d 846

**US v Will**, 449 US 200,216, 101 S Ct, 471, 66 LEd2nd 392, 406 (1980) Cohens V Virginia, 19 US (6 Wheat) 264, 404, 5LEd 257 (1821) "*When a judge acts where he or she does not have jurisdiction to act, the judge is engaged in an act or acts of treason.*"

28. The deliberate acts of crimes, perpetrated by these law firms and attorneys, is an outrageous assault on the entire Court and Justice System throughout America. It is a direct attack, not only on the Defendant JESSIE LEE, but the CITIZENS of the State of Louisiana and the AMERICAN people. These participating Law firms and Attorneys, not only should be SANCTIONED but also brought up on CRIMINAL charges.

29. By now, it should be obvious to this court, that the original Promissory Note on the Defendant's property has been securitized and sold on Wall Street. Due to that process, the Note and Mortgage were bifurcated (separated), The U.S. Supreme court ruled that once the Note and Mortgage separates, the Mortgage becomes a nullity. It is null and void. It can never be used to foreclose on any property. So the Defendants title should be quiet by this court.

**U.S. Supreme Court** in Carpenter v Longan - 83 U.S. (16Wall.) 274, in part states *'The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity'*.

30. Every agency official, law enforcement official, court official, BAR employee or Judge, that read this filing, about these crimes, that were committed in this case, against the court system, defendant JESSIE LEE and the American people, that don't take proper action against the perpetrators and COVER-up and remain SLIENT, The U.S, Supreme Court says are Guilty of fraud. Because SLIENCE equates to FRAUD.

Notification of legal responsibility is "the first essential of due process of law". See also: **U.S. v. Tweel**, 550 F.2d.297. "Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading."

**Morrison v. Coddington**, 662 P. 2d. 155, 135 Ariz. 480(1983).
Fraud and deceit may arise from silence where there is a duty to speak the truth, as well as from speaking an untruth.

[a] *"Party in interest may become liable for fraud by mere silent acquiescence and partaking of benefits of fraud."* **Bransom v. Standard Hardware, Inc.**, 874 S.W.2d 919, 1994

[b] *"Fraud destroys the validity of everything into which it enters,"*
**Nudd v. Burrows**, 91 U.S 426.

*"Fraud vitiates the most solemn contracts, documents and even judgments."*
**U.S. v. Throckmorton**, 98 US 61

31. It is the Defendants opinion and belief, that the following Felonies have been committed in this case by Attorney Barry Grodsky and other: Louisiana Penal code violations: <u>**Counterfeiting**</u> - RS 14:72.2 C (1), (2), (3) A & C, <u>**Forgery**</u> - RS 14:72 A, <u>**Monetary Instrument Abuse**</u> - RS: 14:72.2 A, <u>**Fraud** and the use of **Fraudulent documents, Grand Larceny and Property Theft**</u> , <u>**Louisiana Securities Law**</u> 712 Unlawful Practices - RS 51:703 and 705: 713 Stop orders and Injunctions against Violations : 715 Venue of Civil or Criminal actions: <u>**New York Trust Laws**</u> - NY CLS EPTL § 7-2.4: <u>**Security and Exchange Act**</u> 18 U.S.C. § 1348: US Code - Section 1348: Securities and commodities fraud and <u>**IRS Tax Evasion.**</u>

32. In accord with USC Title 18, Section 4, it is mandatory, that these Felonies/Crimes be investigated and Indictments issued and perpetrators brought before a Judge.

33. There is no reason for the Defendant JESSIE LEE, to appear in court on May 25, 2018. The Courts Jurisdiction has been challenged and by Rule of Law, it must be put in writing and placed on the record by the Plaintiff Attorney Barry Grodsky. Stop wasting my time. There is nothing more to discuss in court. The facts and evidence is currently before this court. All is estopped and the hearing is moot.

34. Unless there is an agreement and settlement reached between all perpetrators and the Defendant, The Defendants Federal Law Suit will continue and more people will be added to it. The Defendant along with others, will expose the TRUE OWNERS of these Courts, that hide in the shadows and profit off of the ill-gotten gains form the American People.

35. Other law suits will follow, against all officials that partake in these crimes, by way of cover-up and remaining silent. Private Attorney General, Rodney Dale Class, who just won his U.S Supreme Court Case in February 2018, against the United States Government <u>See Class v. United States,</u> will seek indictments and file suit on behalf of the American People, whose Properties have been stolen from them, by use of these same methods.

36. This sting is a HOT POTATO and whoever touches it will get BURNED.

## CONCLUSION/PRAYER

The JUDGE should do his JOB and HONOR his OATH of OFFICE!!!

**Boyd v. United,** 116 U.S. 616 at 635 (1885) in part, "It is the duty of the Courts to be watchful for the Constitutional Rights of the Citizens, and against any stealthy encroachments thereon. Their motto should be Obsta Principiis."

The court is to issue its own order and render its own Judgment on the Defendant's OBJECTION TO INTERVENTION AND MOTION TO RECONSIDER, CHALLENGE TO THE COURT'S JURISDICTION, INJUNCTION, CANCEL VOID JUDGMENT AND PROPERTY SALE, QUIET TITLE AND SANCTIONS.

# THIS CASE SHOULD BE DISMISSED WITH PREJUDICE, DUE TO FRAUD UPON THE COURT.

## Memorandum of Law

**Marbury v. Madison**, 5 US 137,(1803) "The Constitution of these United States is the supreme law of the land. Any law that is repugnant to the Constitution is null and void of law."

**McNally v. U.S.**, 483 U.S. 350, 371-372, Quoting **U.S. v Holzer**, 816 F.2d. 304, 307 Fraud in its elementary common law sense of deceit... includes the deliberate concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public,... and if he deliberately conceals material information from them he is guilty of fraud.

"Thus, where a judicial tribunal has no jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void in the fullest sense of the term." **Dillon v. Dillon** 187 p27

"Sovereign immunity does not apply where (as here) government is a lawbreaker or jurisdiction is the issue." **Arthur v. Fry**, 300 F.Supp. 622

"...an officer may be held liable in damages to any person injured in consequence of a breach of any of the duties connected with his office...The liability for nonfeasance, misfeasance, and for malfeasance in office is in his 'individual', not his official capacity..."
70 Am. Jur. 2nd Sec. 50, VII Civil Liability

Pro se or pro per pleadings are held to "a less stringent standard than pleadings drafted by attorneys" citing Byrd v. Stewart, 811 F. 2d 554 (11th Circuit 1987), United States v. Grant, 256 F. 3d 1146 (11th Circuit 2001}

The United States Supreme Court holds allegations of a pro se or pro per complaint to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerrier, 404 U.S. 519.

Courts are obliged to 'look behind the label' of a pro se or pro per motion to determine if a cognizable remedy is available. (United States v. Jordan, 915 F. 2d 622, 624-25 (11th Circuit. 1990), 499 U.S. 979, 111 S. Ct. 1629, Fernandez v. United States, 941 F. 2d 1488 (11th Circuit 1991).

Respectfully submitted

By: *[signature]* Jessie Lee  5-21-2018
JESSIE LEE
904 North Rendon Street,
New Orleans, Louisiana [70119]
ct2sctjl17@juno.com
(904) 514-7346

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing OBJECTION TO INTERVENTION AND MOTION TO RECONSIDER, CHALLENGE TO THE COURT'S JURISDICTION, INJUNCTION, CANCEL VOID JUDGMENT AND PROPERTY SALE, QUIET TITLE AND SANCTIONS, has been sent to the parties listed below, by United States Postal Service, on this 21st day of May, 2018:

    Barry H. Grodsky
    Taggart Morton
    1100 Poydras Street, Suite 2100
    New Orleans, LA, 70163-2100
    For JPMORGAN CHASE BANK, N.A. AND BARRY GRODSKY

    Deutsche Bank Trust Company
    60 Wall Street, 37th Floor
    New York, New York 10005
    Attention: Lynne Malina , (Legal Department)

    Louis, Graham, Arceneaux
    601 Poydras St., Suite 2210
    New Orleans, LA 70130

    Cheri Cotogno Grodsky
    1541 Octavia Street
    New Orleans, LA  70115

    Brian Mahon
    BMRC Properties, LLC
    1551 Magazine Street, Unit B
    New Orleans, LA 70130

    Mark C. Landry
    433 Metairie Rd Ste 600
    Metairie LA. 70005

By: *Jessie Lee* 5-21-2018
    JESSIE LEE
    904 North Rendon Street,
    New Orleans, Louisiana [70119]
    ct2sctjl17@juno.com
    (904) 514-7346

REDACTED LO/_ REDACTED

# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

March 24, 2005        ANAHEIM
[Date]                [City]

904 N RENDON STREET
NEW ORLEANS, LA 70119
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 186,400.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
   **LONG BEACH MORTGAGE COMPANY**
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.850 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the first day of each month beginning on May 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on April 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at : P.O. Box 2441, Chatsworth CA 91313-2441

   or at a different place if required by the Note Holder.
   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $ 1,479.75. This amount may change.
   (C) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of April, 2007, and on that day every 6th month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."
   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of *The Wall Street Journal*, or if the Money Rates section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding **Four and Ninety Nine Hundredths** percentage point(s) ( 4.990 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
   (D) Limits on Interest Rate Changes
   The interest rate I am required to pay at the first Change Date will not be greater than 10.850 % or less than 8.850 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **One** percentage points ( 1.000 %)

J.L.

from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.850 %, which is called the "Maximum Rate" or less than 8.850 % which is called the "Minimum Rate".

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment at any time during the first 2 year(s) of the loan, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the prepayment fee shall be equal to three percent ( 3.000 %) of the outstanding loan amount. If Noteholder receives a prepayment after the first anniversary but on or before the second anniversary of the date of the Note, the prepayment fee shall be two percent ( 2.000 %) of the outstanding loan amount. XXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX Thereafter, prepayment of the Note shall be permitted without any prepayment fee.

The prepayment fee shall be payable upon full prepayment, voluntary or involuntary; including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment, I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

J.L.

LOUISIANA FIXED/ADJUSTABLE RATE NOTE - LIBOR

4140519 (0312)
41405192 (01/13/04) PC

Page 2 of 3

LOAN N‑ ‑‑‑‑ REDACTED

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until my initial fixed rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument provides as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead provide as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
> To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____Jesse Lee_____ (Seal)     _____ (Seal)
JESSE LEE                    -Borrower                             -Borrower

_____ (Seal)     _____ (Seal)
                             -Borrower                             -Borrower

[Sign Original Only]

"Ne Varietur" for identification with an Act of Mortgage passed before me, Notary, this 24th day of March, 2005.

_____
Leslie B. Branche, Notary Public

**LESLIE B. BRANCHE**
**NOTARY PUBLIC #59416**
Orleans Parish, State of Louisiana
My Commission is Issued for life

LOUISIANA FIXED/ADJUSTABLE RATE NOTE - LIBOR

4140519  (0312)

## FORECLOSURE DEFENSE LLC

**STATE OF GEORGIA**          **AFFIDAVIT**

**COUNTY OF DEKALB**

**Re:   Jessie Lee, Owner of 904 North Rendon Street, New Orleans, LA. 70119**

I,   Steven Bernstein, J.D., a citizen of the United States and the State of Georgia over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct, and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein.

1. That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have been certified by Certified Forensic Loan Auditors, Los Angeles, Ca. and lecture at many of their regional meeting in Los Angeles, New York, Atlanta, Miami, Florida. I have completed the required training and engaged in continuing education with Bloomberg in New York City headquarters. I have the requisite knowledge and trained ability to navigate and perform effective searches on the Bloomberg terminal.
2. I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in the field. I have produced over four hundred Securitization Analysis Reports since 2009. I have a B.A., M.B.A. in international economics from Loyola University, New Orleans, Louisiana and a law degree from Atlanta Law School in 1993. I owned a mortgage company for 19 years and have had a real estate license for 28 years.   I am a certified public school teacher and at one time was a 12th grade history teacher. I have been a Hilton Hotel franchisee since 2004 and have owned numerous hotels and investment properties over the years. From 1990-2003 I personally sold and rehabbed 220 properties throughout the Atlanta, Ga. market. I founded Foreclosure Defense LLC in 2009. My web site is ForeclosureDefenseLLC.net.

## EVIDENCE
### EXHIBIT B

3. The contents of this report are factual, but it is provided for informational purposes only and is not to construed as "legal advice". The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

4. Based on my many years in the mortgage industry and as a real estate agent, the title records of the audit summary shows, the Original Note, with Loan Number 6421919-7887 on it, was sold from Long Beach Mortgage Company to Long Beach Securities Corp on July 15 2005. This would be the First FULL endorsement on the original Note.

   Then Simultaneously,

   The Note was sold from Long Beach Securities Corp (The Depositor) directly to Deutsche Bank (Trustee). That would be the Second endorsement, Full or in Blank, on the original Note. At this time, the Original Note on Jessie Lee property, address at 904 North Rendon Street, New Orleans, Louisiana 70119, must have at least two endorsements on it.

5. The Note was sold from the Depositor ( Long Beach Secerities Corp) directly to the Trustee (Deutsche Bank). Only **LONG BEACH SECERITIES CORP.,** Can do a blank endorsement in this transaction. Long Beach Mortgage Company (The Loan originator) cannot do a Blank endorsement in this transaction.

6. According to the PSA Form Exhibit F-2, filed in an 8-K with the Securities and Exchange Commission on July 15, 2005, the Trustee, Deutsche Bank, certified to the SEC, that the Note had all the proper endorsements on it, when it was obtained by the Trustee.

7. The Civil District Court, for the Parish of Orleans, in the State of Louisiana, Certified copy of the original Note, provided to me from Jessie Lee, which he states, is being used to foreclose on his property, under case number 2014-12347, has only one blank endorsement on the back of page number three, from **LONG BEACH MORTGAGE COMPANY**. Based on the stated above facts, It is my opinion and belief, this Note is a **COUNTERFRIT NOTE** and the endorsement is a **FORGERY**. These are Crimes.

8. Additionally. According to the PSA Certification, There were two Assignments made of the mortgage, on the property in 2005. These Two Assignments appear to be missing from the chain of Title.

9. The Two Mortgage Assignment, provided to me by Jessie Lee, Dated July 22, 2014, Signed by Lakesha M. Sellers, as Vice President of JP Morgan Chase Bank NA and also as Attorney in Fact for the FDIC, are fraudulent documents. As they reference no nexus to the previous two assignments in 2005. However, they do show a Bifurcation of the Note and Mortgage, a clear break in the chain of Title and a Slander of Title.

10. The original Note and Mortgage on Jessie Lee's property has been separated (Bifurcated). I make note that the **U.S. Supreme Court** in Carpenter v Longan - 83 U.S. (16Wall.) 274, in part states ' The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity' .

    The Two Assignments of Lakesha M. Sellers, clearly assign's the Mortgage alone. It does not assigned the Note. This separation, along with others, makes the Mortgage on Jessie Lee's property a Nullity. It is void absolutely. A confession inside of a void Mortgage is moot. It cannot be use in an Executory Process to foreclose on a property. It is my opinion and belief, that the Mortgage on Jessie Lee's property is void and cannot be use to foreclose on his property at 904 North Rendon Street. New Orleans, Louisiana 70119.

11. Also It is my opinion and belief, the Attorney's in Jessie Lee's case, filed false documents, by filing a foreclosure and Note and not having a Perfected Lien. Especially when they continues the case after being shown these facts.

    <u>18 USC 47-1021</u>

    Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than

five years, or both.

12. The PSA certifies the chain of the note from the Depositor, Long Beach Securities Corp in which the Trust is bound.

This certifies that Cede & Co. is the registered owner of the Percentage Interest evidenced by this Class I/II-M10 Certificate (obtained by dividing the Denomination of this Class I/II-M10 Certificate by the Original Class Certificate Principal Balance) in certain monthly distributions with respect to a Trust consisting primarily of the Mortgage Loans deposited by Long Beach Securities Corp. (the "Depositor").

The Trust was created pursuant to a Pooling and Servicing Agreement dated as of July 1, 2005 (the "Agreement") among the Depositor, Long Beach Mortgage Company, as master servicer (the "Master Servicer") and Deutsche Bank National Trust Company, as trustee (the "Trustee"). To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Agreement. This Class I/II-M10 Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Class I/II-M10 Certificate by virtue of the acceptance hereof assents and by which such Holder is bound.

Respectfully submitted,

_Steven Bernstein_  4/27/2018
Steven Bernstein, J.D.        Date

**THIS LEGAL DOCUMENT IS BEING AUTHENTICATED AND A SUBSTITUTION FOR A NOTARY. THIS IS TO BE CONSIDERED AN OATH GIVEN UNDER PENALTY OF PERJURY. REGULATED BY TITLE 28 U.S. CODE SECTION 1746.**

Jess Almanza                               May 6, 2018

Director, Secondary Marketing at Bank of America

Bank of America University of the Pacific

Greater Los Angeles Area 272 connections

Get the **LinkedIn** app and see more profiles like Jess' anytime, anywhere

Jess Almanza

Director, Seconda...

Experience

   Bank of America

   Director, Secondary Marketing Operations

   Company Name **Bank of America**

   Dates Employed **Sep 2006** – Present Employment Duration

   11 yrs 9 mos

   Location Westlake Village, California

   Washington Mutual

   Vice President - Capital Markets/National Post Closing Operations

   Company Name **Washington Mutual**

   Dates Employed **Aug 1995 – Jul 2006** Employment Duration

   11 yrs

Exhibit C

Which is why endorsements can be different but have electronically applied signatures that are exact replicas, like Jess Almanza's different endorsements on two different promissory notes (but transpose as exact replicas).

*[endorsement stamp: Pay to the order of / Without Recourse / Washington Mutual Bank, FA / Jess Almanza, VP]*

*[endorsement stamp: Pay to the order of / Without Recourse / Washington Mutual Bank, FA / successor by merger to / Bank United of TEXAS, FSB / Jess Almanza, VP]*

Now we'll transpose them: m:

*[endorsement stamp: Pay to the order of / Without Recourse / Washington Mutual Bank, FA / successor by merger to / Bank United of TEXAS, FSB / Jess Almanza, VP]*

Beautiful work of art!

Exhibit D